Madam Clerk, please call the next case. 115-3034, Calumet School District 132 v. Dialog Control. Counsel, you may proceed. Good afternoon, Your Honors. Counsel. My name is Evan Hughes. I am the attorney for the defendant, Appellant Jonathan Jordan. This case involves the applicability of the Voluntary Recreation Exclusion found in Section 11 of the Workers' Compensation Act to a school teacher who was injured while participating in a student-teacher athletic competition. A second issue on appeal is the appellant's prayer for a review of the incorrect calculation of his average weekly wage based on this court's holdings in Elgin Board of Education in Washington District 50. Where did the appellant ask for a review of the average weekly wage issue? Excuse me? Where did the appellant ask for a review of the average weekly wage issue? At all stages in the notice of appeal. Not in the notice of appeal, Your Honor. I was uncertain because the circuit court's order was silent. It did not address that issue. So when I filed the notice of appeal, I was appealing the decision of the circuit court. And then again, because it was silent, it was uncertain procedurally as to how to address it in the notice of appeal and had requested leave in my brief to possibly amend the notice of appeal on the pro tonque, if that's procedurally allowed. You get time limitations to do that, too. You can see there is a jurisdictional issue here on that issue. From the standpoint of it not being raised in the notice of appeal? Yes. Yes. The time for filing the amended notice expired as well. And I did actually file an amended notice because there was an issue, I believe. Well, I, again, I was uncertain and I did raise it in the document statement. I realize that's not the notice of appeal. Well, we'll take into consideration, but I think there's an issue there. I understand, Your Honor. The appellants have mentioned the standard of review on both issues, should the court address both. The standard of review is, this is an interpretation of the statute, and therefore, the standard of review is to no vote. And this question about that, I mean, because we're reviewing the commission decision, not the circuit court's decision. Did the commission make factual determinations in determining that this case did not fall under Section 11? The court, I don't believe that any of the relevant facts were in dispute. If we look at the facts from the standpoint of were the communications that were made to Mr. Jordan regarding the desire of Mr. Levy, the principal, to participate, Mr. Levy's desire that Mr. Jordan participate in the game, whether that communication constituted the requisite pressure upon Mr. Jordan to participate in the game, I don't believe that any of the relevant facts were in dispute. If the commission did justify a determination that his participation was not voluntary, then I would say that, yes, the commission did make that determination that the repeated requests made by Mr. Levy constituted a sufficient amount of pressure to determine that Mr. Jordan was not voluntary. And that's not a fact question? I mean, you do understand that if it's a fact question, we have to defer to the decision of the commission which rule in favor of you, right? Right. Well, then I would suggest, yes, I don't think it is a fact question. It's like I thought it could be a fact question. And originally that passed over to me, but anyway, so this, the issue relating to the applicability of the voluntary recreation exclusion provided in Section 11, really in this context, in relating to a teacher's participation in a student-teacher athletic activity specifically has not been addressed by this court. There was a decision in 1980 in the case of Chicago Board of Education versus the Industrial Commission that was decided before the act was amended to add the recreation, voluntary recreation exclusion. But nevertheless, you have the Elmhurst Park District, which was the first case interpreting. And the Elmhurst Park District, therefore, seems to be the case because both parties rely on the Elmhurst Park District. And so in the analysis, obviously we have the issue of, based on the Elmhurst Park District, we have the issue of was the activity recreational in nature, and then we also have the issue of whether the employee's participation in the activity was voluntary. The appellate, Mr. Jordan, asserts in this case that his participation in the activity was not voluntary, and there are facts in support, as the court addressed, facts in support of his position in that regard. But the appellate submits that the court need not even get to that issue because under the interpretation of recreational activity as a voluntary activity, it is not voluntary. As provided in the Elmhurst Park District case, the activity that caused Mr. Jordan's injury was not recreational in nature. They basically say it's part of his job. He was a fitness supervisor, and he was playing volleyball as part of his job, and therefore it was not recreational activity. That's basically what they said in the Elmhurst Park District. I agree that basically that's what they said. And you're saying he's a teacher, this is an after-school activity, he's expected to do after-school activities, it's part of his job, it's not a recreational program. Exactly. That is exactly what I'm saying. And reiterating what the court looked to in defining recreational activity, they actually went to the Webster's Dictionary, they said the word recreational is derived from recreation, which is defined as the act of recreating, or the state of being recreated, or that could be recreated, recreated. Refreshment of the strength and spirits after toil, diversion, or play. Well, I don't know if this is as clear-cut as we seem to be going, because we talk about, yes, refreshment, strengthen the spirits. I mean, somebody could be a teacher, but it may not necessarily be a part of their job to get involved in physical activity. So just because the person's a teacher and they end up in a game doesn't necessarily mean it is recreation or isn't, depending upon the circumstances. In the context, but I think you were on to something initially. I'd like you to address why it was a part of his job, what directions was he given by the employer, what pressure was put on him to make it clear that he wasn't doing this, he didn't really want to do this anyway, even though it was a part of his job. So can you tell us that? Mr. Jordan testified that he did not want to participate in the basketball game. He's not an athlete, he was not a basketball player in particular. He had never played organized basketball. He had commented on the fact that about five years prior, his last exposure to basketball was about five years prior where he was playing horse or pig in the driveway with his nephews. He had repeatedly been asked by Mr. Levy to participate in the game, and on three prior occasions he had said, no, I don't want to participate, I'm not a basketball player, I would prefer not to do this. And after the third time, when Mr. Levy came to him again, he did describe a more assertive action on the part of his boss. Assertive request or direction? Assertive request. And as he had testified, Mr. Jordan was a first-year teacher at this school. He had been out of teaching for ten years prior to obtaining this job. This was March of the school year. He had not yet received his performance review from Mr. Levy and had not received any notification that his contract would be removed. And he was concerned that if he did not agree to participate based on this fourth request, that it may reflect poorly on his review and it may affect his ability to get a contract for the next year. So that evidence would support the non-voluntariness of this activity, is that correct? I think absolutely, under the Pinckneyville Hospital decision and really even under Elmhurst Park District, because in neither of those cases... And that would be sufficient to support the Commission's finding on voluntariness, right? Yes. Okay, so if we stay within this, if you concede it's recreation, then you're saying, well, it's non-voluntary. Yes, I agree, but I don't necessarily want to concede that it's recreation either. Then what do you say it is? And why do you say it is? And the reason I say this is because, and I've thought about this case a great deal. It's been around for several years in my office. And I point out in the brief that, and I raised this at trial level also. I mean, at all times, Mr. Jordan, while present after school, in the school gymnasium, was still acting as a teacher. He still had all of his responsibilities as a supervisory and liberal parentis-type individual with respect to the students. And he obviously had to respond if there was an emergency there, if there was a medical condition, if there was an injury, if there was a fight between students. Not only did he have to react immediately to address that situation, but as a teacher he also had responsibilities to follow up. He had certain reporting requirements, incident reports that he would be required to do. And he and the other teachers present were the only ones responsible for serving that function during the game. During the what? During the activity, during the basketball activity. Oh, so that, okay. And then also... What's the purpose of this activity? The purpose of the activity was twofold. It was to reward the well-behaved students at the school by giving them something to do after school. And then the other purpose was, according to Mr. Levy, was he felt that it engendered a positive relationship between the teachers and the students at the school. So morale. Morale. And so there's another aspect, though, that I was thinking about that I did want to communicate to the court. During your sleepless nights, you were thinking about it, right? Well, in the shower. But the point would be that when a teacher is participating in an activity like this, and we look at the definition and we compare it to the definition that the court used in Elmer's Park District, when somebody participates in a softball league with their peers after, you know, a beer league after work, or in a bowling league, or in a golf outing, it is an opportunity to let go, to release, to socialize with your peers. When an adult teacher participates in a student-teacher basketball game, put aside all the other responsibilities they have to do if something bad happens. They still can't, they're not letting loose, or at least they should not be. They should be tempering their physical conduct to make sure that they're not going to harm the students, to make sure that they're showing exceptional sportsmanship to the students, to make sure that they're doing a positive role. Can I summarize? You're trying to say this is a natural extension of the educational function of which is his work activity. That's exactly what I'm trying to say. So you're saying that every time a teacher gets involved in a basketball game, it takes it out of the recreational exception? If a teacher is involved in a student-teacher athletic activity, sponsored by the school, on the school premises, then yes, I would say that under those circumstances, it's outside of the recreational exclusion. If a teacher runs into a student at the park and participates in a game with them that's separately, completely outside of the school, then I would say no, that's not. I think you've got to look at the context. I for one don't know that it's either or. Let's assume this. The principal of the school puts up a notice that any teachers who want to volunteer to get into a student-teacher basketball game can do so. And the teacher signs up. He signs up because he wants to strengthen his spirits and he wants to refresh himself. Are you telling me that that isn't going to be under the exception? I mean, is it always an either or? Doesn't the context matter here? You want us to announce a rule that any time a teacher ends up on a basketball court, he's covered? Really? Well, not any time a teacher ends up on a basketball court. But I do think that if these activities are morale-boosting and positive experiences for the students, that we should want to encourage teachers to participate in them. So I hesitate, obviously, to say that this should be an absolute blanket rule, because I do think in my client's case, in Mr. Jordan's case, that it was either or. Neither voluntary, nor was it recreational. He has a stronger case based upon the history, as he testified to, as to how, in this case, he ended up on the basketball court. But I'm talking about a case where there's a volunteer sign-up sheet. I don't know about that one. Well, obviously, if it says volunteer sign-up sheet, that would lend itself to a finding that the participation was voluntary. So I can see how there could be circumstances where it would. But in this case, we don't get to it, because your strongest argument is, look, he clearly didn't want to do it. He succumbed on the fourth request or direction, and he did it because he was pressured into it, and it was not something that he voluntarily signed up for. Is that the essence of your argument? Yes. Okay. And that it was not recreational for Mr. Jordan, because he did not. He was not strengthening his spirits after toil. And then the other issue, should the Court hopefully address it, in spite of my error in the notice of appeal, is simply that Arbitrator Florence has miscalculated the average wage when she rendered her decision. When I received the award, it was favorable on the Section 11 issue. We chose not to appeal the decision, but, again, did raise it in our response in the statement of exceptions, raised it again in the circuit court. There's never been a substantive argument on the part of the respondent in opposition to say that Arbitrator Florence had, in fact, calculated an average wage. She did not calculate it correctly, because she did. She just, what she had done was she just did the traditional, she looked at how much he had earned up to the date of injury and divided it by the number of weeks that he had earned up to the date of the injury, whereas the correct calculation is how many weeks was Mr. Jordan required to work during the school year in total and divide that by the amount of his earnings. And that results in a higher average weekly wage of, I believe, $1,027.97. So the appellant would pray that the Court affirm the decision of the commission, confirm the decision of the commission, and reverse the circuit court decision. Thank you. Thank you, counsel. Counsel, you may respond. Good afternoon. My name is Erin Baker. I represent the Calumet School District. Counsel, before you get started, it wasn't asked of opposing counsel, but asked you as to the standard of review that applies both at this level and then also at the circuit court level. The commission found that the petitioner had established credible evidence that his injury arose out of in the course of his employment and that he was not engaged in a voluntary recreational activity as defined in Section 11 of the Act at the time of his injury. Why isn't that decision subject to manifest of the weight, manifest weight of the evidence review? Well, I actually tend to agree with what Mr. Hughes said, that really the facts of the case we're mostly in agreement on. It's just the application of those facts to the statute, to Section 11. And then as far as the wage issue, the application to Section 10 of the Workers' Comp Act. So in the brief, and then also I saw in the appellant's brief an explanation of the standard of review. And then also in the circuit court's order, references made to the interpretation of the statute. Do you agree here that it's not necessarily the interpretation of the statute by the commission that's being questioned here? It's the application of the law to the facts. Yes. So when you're arguing for a de novo standard, you're relying on the body, and it's a slender body. It's a case where it says where the facts are undisputed, the de novo standard is appropriate. Is that right? Yes. But as we're discussing it now, I do tend to agree that the manifest weight standard might be more appropriate in review of the commission decision. So like Mr. Hughes, you have second thoughts about de novo? Yes. You're making me question it. Yes. Is it fair to say that different inferences could be drawn from the facts that are undisputed? Yes. Absolutely, yes. In which case that yields the manifest weight standard. Yes. I think that's correct. Yeah, that's correct. Thank you. You could have looked at this and said we don't think the principle applied enough pressure to it. Sure. You know what I mean? Yes. But they went the other way. Sure. Yes. So having said that, tell us why the claimant got on the court because he wanted to strengthen his spirits and refresh himself voluntarily. How did that happen? Did he volunteer? Did he sign up for this thing? No, he did not sign up. The principle had approached him on I think three occasions, he testified, asked him to participate.    He had denied the fourth time. He had denied the fifth time. He had denied the sixth time. He had denied the seventh time and agreed to participate. I think the record is clear that at trial he testified consistently that he participated for his own benefit. It was for brownie points. He wanted a good evaluation. So I argue that it was really his own benefit that he was participating and not for the benefit of the school district. He wanted brownie points from his boss. So he agreed to participate. He did. Out of 40 teachers at the school, only five participated.  He did not participate. He did not participate. He did not participate. He did not participate. He was a coordinator of the event who testified for the respondent at the arbitration hearing. Testified that it was absolutely voluntary. Like I said, 35 teachers chose not to participate. It was after school. No one was paid. There was no punishment for not participating. No incentive for participating. And that it was completely voluntary. It was impromptu. It was more of a formal type of event. How many of those teachers were on tenure? I'm not sure. I'm not sure. Did he have any friends? Okay, don't you think that's important? We didn't establish that at trial. Yeah, we didn't establish that. That would be a different circumstance. One on tenure teacher and 35R. Yes. Now you say after the third request, or fourth request, he decided he wanted to get brownie points for his job. But when he succumbs to a third or fourth request for, let's assume, brownie points he decides for his job, isn't he there because of the job requirements? I mean, the brownie points for the job doesn't sound like he's out there strictly for his own benefit, does it? Well, he was trying to get a better evaluation for himself, and he wasn't required to do that by anyone at the school. He described it as friendly pressure at the trial from the principal, and I just don't think that friendly pressure can be equated to being ordered or assigned, which is stated in the statute. I think the plain meaning of the statute says ordered or assigned, and to equate friendly pressure to being ordered or assigned to participate in something is kind of a slippery slope. But isn't there a middle ground, as I was trying to allude to earlier? I don't know that you have an either or. I mean, if you look at the definition in Elmhurst about somebody doing something for their own diversion, he didn't walk on, he didn't see a group of students playing during a recess or whatever and walk on and start playing basketball, then clearly you would argue, I think eminently clear, it was for his own diversion. Here, this was a direct result of requests by his employer. And now, whatever he decided, I mean, it was still in response. Was it not to request for an employer? He didn't walk on there voluntarily of his own accord, did he? He was asked by the employer to his pay. In response, you could clearly say, right, I mean, whether that's sufficient pressure under the statute would be our decision, but it was in response to requests. Correct? Yes. How do you respond to the recreational claim that this is a recreational activity not an educational activity for an extension of his work? Yes, I mean, his job as a science teacher, it wasn't inherent in his job duties to participate in these sort of activities, unlike we discussed the Elmhurst case earlier, Apollo discussed the Elmhurst case, and in that case, the fitness instructor, it was part of his job to participate in the physical activities, and it was inherent in his position. Here, as a science teacher, it's not inherent in his position to participate in these activities. Now, yes, a basketball game could be considered to be recreation, but as I said, I think he was there for his own benefit to get these brownie points from the principal. He wasn't ordered or assigned to be there, and the testimony is clear that it was voluntary and that he could have chosen to say no, and there was no incentive of punishment. So you say it is recreational. Yes, the game. I mean, that's, you know, allows you not to take compensation, right? It's recreational, it's voluntary, right? I would say the game was not recreational. It was not recreational? Well, I guess it depends on how we define recreation. Yes, I think we defined it in Elmhurst. Yes, and as I said, I find Elmhurst distinguishable, you know, as that was inherent to the physical fitness instructor's job, and this is not inherent to his job duties as a science teacher. Okay. I also want to touch on the So there isn't any merit to the argument by opposing counsel that this activity is an extension of his teaching duties? No, I don't think it's an extension of his teaching duties. There were, like I said, a number of other teachers who, the majority of teachers, who chose not to participate. He had no punishment for not participating in the activity. And it was his choice to participate, and he chose to do so to basically earn extra credit brown points from the principal and try to get a better review. I do want to also touch on the wage issue that was brought up by the appellant. As was brought up before, that issue was never appealed by the appellant at any step of the way. I would argue that there's no jurisdiction here, since it was never appealed at any level. And even still, even if you would choose to look at that issue, section 10 is clear that where an employee hasn't worked for the entire year, it should be determined, the wages should be determined by dividing the actual earnings divided by the weeks worked, which was done by arbitrator Flores. So I would argue that her findings as far as wages were correct, even if he did choose to look at it and did find jurisdiction over that issue. Do you consider engaging in a sports activity which furthers an employer's business to be voluntary recreation, even if you're not ordered to do it? Is it a recreational activity if the very game that's being played furthers the employer's business? Or does that take it out of recreational activity? I think it depends on the specific facts of the case. I think here he was outside of the course of his employment when this accident occurred. It was his responsibility there. The reason why I'm asking the question is because there seems to be evidence in this case that this after-school basketball program was designed by the school for rewarding students for something. So it occurs to me that the basketball game itself is something that furthers the student, the school's business, whatever it does with its children. So now the question becomes although he wasn't ordered to do it, and he said he wasn't, he was asked, and he felt pressured, but he was never ordered. Ordered is the language the statute uses. And he was not assigned to do it. Is his participation in an event that furthers the employer's business taken out of the realm of recreational activity such that an injury would be compensable? Well, first of all, I want to point out that Mr. Corley was clear in his testimony that this was really an informal event that him and another teacher, Mr. Marinello, put together. This wasn't a formal program put on by the school. This was an informal, impromptu, as he described it, sort of event that two teachers decided to put together and they would see if any other teachers wanted to volunteer or participate. So I think that the facts are a little different in that this wasn't a formal program that the school had every week to reward students. Well, how could it be impromptu? If the employer, the supervising teacher had asked him several times to participate, how is this impromptu? I think it happened on a few occasions, the game. But it wasn't as though it was... A regularly scheduled activity. Yes, yes. Okay. But the idea was they were doing more than one. They were doing it on occasion. Yes. Okay. Impromptu to me means all of a sudden, on one given day they decide, you're going to do this for the first time. Right. Didn't he testify that Levy and another colleague told him that it was an afternoon basketball program designed to reward students for performing well? He may have testified that. If you look to Mr. Corley's testimony though, he describes it as an impromptu, informal sort of activity. Is there an impromptu basketball game between students and teachers to challenge one another? So if there are no other questions, I would ask that this Court I would respectfully ask that this Court affirm the decision of the Circuit Court which found that this was not compensable  of the Commission. Thank you very much for your time. Thank you, Counsel. Counsel, you may reply. I just wanted to point out with respect to Mr. Corley's testimony first of all, Mr. Corley was not the supervisor. What actually he had testified to was that there was an ongoing after school basketball program for the students that Mr. Corley and the other another teacher, Mr. Marinello, ran and that as part of this program or in conjunction with, they had held student teacher basketball games. Mr. Corley certainly testified that he had no he could not answer one way or another as to what the content of any conversations between Mr. Leiby, the principal who also participated in the game, and who was the one who had made multiple requests upon Mr. Jordan to participate Mr. Corley had no to testify to it and he doesn't know the level to which Mr. Jordan was pressured by Mr. Leiby to participate. And then I would simply submit that Counsel acknowledged that this was not a recreational activity for Mr. Jordan. She suggests that he was doing it for his own benefit in order to get brownie points or I guess to curry favor with the principal, but not that he was recreating by doing it. Now Hold on. If we go that's a slippery slope. We're going to get started with baseball teams for employers that are totally voluntary and that they engage in it to get brownie points with their supervisor. That's still a voluntary recreational activity. I acknowledge that. So the fact that he wants brownie points doesn't take it out of the statute. Well, Your Honor, I acknowledge that I agree. But that's not why Mr. Jordan, and that's not his testimony. He certainly, and this is undisputed testimony, Mr. Jordan testified that he was afraid that he would not get a renewal of his contract if he refused a fourth time to participate in the game. And I don't think that's seeking brownie points. I think that's simply making an effort to show your employer that you were part of the team, that you were going to further the interest, the employer's interest. So the reason I brought that up is simply because it's an acknowledgement that the action of participating in the basketball game was not recreational for this man. And the whole issue of Elmer's Park District solely being distinguishable on the basis that the claim in that case was a fitness instructor, certainly the decision does discuss that as an element, but the fact that he, by participating in this activity that was outside of his, the scope of his purview, he was a fitness instructor, he was not involved in the racquet sports program at all, and was in fact the employer's supervisor testified that he actually should not have been participating in that activity, but the court found that he was furthering the interest of the employer by participating in Philadelphia. Well, I mean, that was the If the activity furthers the interest of the employer, the question becomes then, does it take it out of the realm of a recreational activity and become part of the employer's business? I think in this particular case, it certainly does. I think in Elmer's Park District, it certainly did. I suppose there could be situations where you know, the employer thinks that they're going to get more business if they have a team in the softball beer league or something, which may, that may create a more gray area, but I think in this particular case, where the sole reason to have a student-teacher basketball game is to improve morale at the school and create some sort of a bond between the students and teachers, so yes, I would say that because it furthers the interest in the school, and there's such a direct connection and a direct sponsorship of the employer, that the employer is so directly sponsoring the activity, yes, I think it does take it outside of the recreational context. Thank you both, counsel, for your arguments in this matter. If you take no advisement, a written disposition shall issue.